May Term,<br>
1859.<br>
——<br>
Sorin<br>
v.<br>
Olinger.

---

## Sorin v. Olinger, Administrator

Accounts for boarding, clothing, and educating the children of an intestate after his death, are not demands against his estate, and his administrator has no right to pay them.

But where the intestate, in his lifetime, took the promissory note of *A.* for a large sum of money, at the same time entering into a parol agreement with *A.* that the latter should board, lodge, and educate certain of his children at an institution of learning of which *A.* was president and general agent, and that *A.'s* accounts therefor should be applied in payment of the note; and the boarding, lodging, &c., were furnished, during the life of the intestate, both before and after the maturity of the note, and continued to be furnished, pursuant to and in reliance upon the agreement, after his death; and after the death of the intestate, the accounts were presented to his administrator, and by him settled and allowed to go in payment of the note: *Held*, that the agreement was valid, and had it been fully executed at the maturity of the note, it would have constituted a bar to an action upon it. *Held*, further, that, as the intestate before his death permitted *A.* to continue to furnish to the children of the intestate the board, &c., after the note matured, thereby assenting that he should proceed to board and educate them, as originally agreed, in payment of the note; and as the administrator not only suffered him so to proceed, but allowed his accounts as a proper credit on the note,—*A.*, as defendant in a suit upon the note brought by the administrator *de bonis non*, should be allowed to stand as he would have stood had his entire demand, as allowed by the administrator, accrued before the intestate's death.

*Quære*, whether those interested in the estate might sue the administrator on his bond.

APPEAL from the *St. Joseph* Circuit Court.

Davison, J.—The appellee, as administrator of the estate of *Francis La Fontaine*, deceased, brought this action

*Monday,*<br>
*May 23.*

against *Sorin*, who was the defendant, upon a promissory note for the payment of 2,000 dollars. The note bears date *January* 22, 1844, and is payable to the plaintiff's intestate at three years, with interest.

Defendant's answer contains four paragraphs, on all of which issues were made. As the fourth states the ground mainly relied on in defense of the action, that paragraph alone will be noticed. It is substantially as follows:

"When the defendant gave the note in suit, he was, and ever since has been, the president and general agent of the *University of Notre Dame Du Lac*. He gave the note on account of the business of the university, and the same, at the time it was given, was secured by a mortgage which is on record in *St. Joseph* county. At the time of the giving of the note, and afterwards during the lifetime of *Francis La Fontaine*, it was agreed between the defendant, as such president and agent, and *Francis La Fontaine*, that *Lewis*, *Thomas*, and *John La Fontaine*, sons of said *Francis*, should be received, boarded, lodged, educated, and provided for at said university, and that the reasonable cost and expenses of such board, &c., should be applied toward the payment of, and credited upon, said note. In pursuance of said agreement, *Lewis*, *Thomas*, and *John La Fontaine* were then received into the university, and boarded, lodged, provided for, and educated therein, until the reasonable cost and value of the same amounted to a large sum, viz., the sum of ――――― dollars, which was sufficient to pay off and discharge said note, excepting only a balance of 50 dollars, all which was done in reliance upon the agreement with *Francis La Fontaine*. On the 14th of *October*, 1851, an account for boarding, lodging, providing for, and educating said *Lewis*, *Thomas*, and *John*, was presented to one *Julian Benoit*, who was then the sole administrator of the estate of the decedent, and was admitted and settled by him, and the entire amount thereof was by him then and there applied on said note and mortgage, whereby the same was fully paid and settled, excepting the aforesaid balance, for which it was then agreed between them that defendant should give a new note to the

administrator. And in pursuance of the settlement so made, the administrator then and there entered full satisfaction of said mortgage on the record thereof, which yet remains in full force, &c. It is averred that, by accident and inadvertence, the note was not surrendered, &c. The accounts alleged to have been presented to and allowed by the administrator, appear in the record, and, in the aggregate, amount to 2,800 dollars.

The issues were submitted to the Court, who, at the instance of the defendant, found specially the facts upon which its general finding is based. The facts thus found are these:

"1. Defendant executed the note in suit to *Francis La Fontaine.*

"2. *Francis La Fontaine*, in his lifetime, viz., in *November*, 1844, sent his son *Lewis* to the *University of Notre Dame Du Lac*, where he remained from the 13th of that month to the 9th of *March*, 1845, and while there was furnished with articles necessary for his use, and tuition, to the amount of 60 dollars and 72 cents.

"3. That *Francis La Fontaine*, in his lifetime, sent his son *Thomas* to said institution, *October* 20, 1846, where he remained till *October* 20, 1847, during which time he was furnished by the institution with board, tuition, and other necessary articles, to the amount of 221 dollars.

"4. That the remainder of the account referred to in defendant's answer arose after the death of *Francis La Fontaine*, who died in *May*, 1847.

"5. That *La Fontaine*, in his lifetime, intended to apply the expenses that had been incurred at the university for the education of his children upon said note, and that the same was so understood and agreed by the university.

"6. That there was an agreement, at the time of the making of the note, between *Sorin* and *La Fontaine*, that the note was to be paid off and discharged by boarding, lodging, and educating the children of *La Fontaine* at said institution.

"7. That the whole of said account was examined and allowed by *Julian Benoit*, as administrator of the estate of

*Francis La Fontaine,* and, by agreement between him and defendant, was to be applied upon said note—the note to be given up and a new note given for what remained due on the old note; but no new note was given.

"8. That in pursuance of said agreement, *Benoit,* as such administrator, entered satisfaction on said mortgage."

And the Court, as a conclusion of law upon the above facts, found—

"That the accounts accruing after the death of *La Fontaine* cannot be applied in payment of the note; and that such application by the administrator, as aforesaid, was void, as against the plaintiff."

And further, the Court found—"That there was due the plaintiff, after deducting the accounts of *Lewis* and *Thomas,* as aforesaid, 3,216 dollars."

Motion for a new trial denied, and judgment, &c.

If *Benoit,* as administrator, had power to make the settlement alleged in the answer and proved by the evidence, or if it was an effective defense to the action, then the judgment of the Circuit Court cannot be maintained; because, in point of amount, it, is not consistent with the special finding of the facts. Had the administrator such power? An act in force when these transactions occurred, provides that, "from the granting of the letters, every administrator shall be invested with all the powers and rights of the deceased whom he represents, so far as it respects the personal estate of the deceased, subject to restrictions and limitations of law on account of his trust, and the duties arising therefrom." R. S. 1843, p. 557, § 376.

These restrictions and limitations are definitely pointed out in the statute, and relate principally to the mode in which the trust is to be executed. And in case the administrator fails to observe them while in the management of the trust, he would be certainly liable on his administration-bond. Still, however, persons who deal with him in matters relating to the estate, cannot be afterwards called on to account, unless, indeed, they knew, at the time of such dealing, that he was acting in violation of his trust, and in fraud of those interested in its due execution. The

fraud vitiates the transaction.    Williams on Executors,
&c., 4 Am. ed., pp. 796, 799.    Under the statute to which
we have referred, the administrator is required to proceed
with diligence to pay the debts and just demands against
the deceased, &c.    But, ordinarily, demands like the one
before us, for boarding, clothing, or educating the children
of the intestate, subsequent to his death, are not demands
against his estate, and, consequently, his administrator
would have no right to pay them.    *Id.* 1534.    Unless, then,
the agreement between *Sorin* and *La Fontaine*, made at
the date of the note, was valid, and has been executed
according to its legal effect, the administrator could not
rightfully allow the defendant's account in payment of the
note.    Mr. PARSONS says:—"A suit on a written contract,
as a note of hand, may be barred by the execution of a
parol agreement, entered into concurrently with the writ-
ten contract, and agreed to be taken in satisfaction of it."
2 Pars. Cont. 194, and cases there cited.    See, also, *Rhodes*
v. *Thomas*, 2 Ind. R. 638, and *Ward* v. *Walton*, 4 *id.* 75.
The principle involved in these authorities seems to apply
to the case at bar.    As we have seen, the note in suit was
given on the 22d of *January*, 1844, payable at one year;
and upon the day it was given, the parties agreed that it
was to be paid off and discharged by boarding, lodging,
and educating the children of *La Fontaine* at the institu-
tion.    Upon the principle just stated, this agreement must
be held valid; and had it been fully executed at the matur-
ity of the note, it would have constituted a bar to the ac-
tion; but that has not been done; and the question is, can
the defendant now, having, since the note became due,
proceeded to comply with the agreement, set up such com-
pliance as an effective defense?    We think he should, in
this instance, be permitted to do so; because the intestate,
after the note matured, and before his death, continued his
children at the institution, thereby assenting that the de-
fendant should proceed, as originally stipulated, to board
and educate them, in payment of the note; and *Benoit*,
the administrator, has not only suffered him so to proceed,

May Term,
1859.

but has authorized his charge for such educating, &c., as a proper credit on the note.

Under the facts stated in the record, the defendant, in our opinion, should be allowed to stand as he would have stood had his entire demand, as settled by the administrator, accrued before the intestate's death. It may be noted, that the settlement in question is not tainted with fraud; that the administrator simply carried out the agreement made at the date of the note; and though in that he may not have acted in strict conformity with his duty, still the dealing between him and the defendant was in good faith, and the latter, it seems to us, has a right to avail himself of the settlement so far as it was intended to operate as a payment on the note.

Whether those interested in the estate would have a right of action against the administrator on his bond, is a question not before us.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. B. Niles*, for the appellant.